FRED EBERLIN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6827.    Promulgated October 31, 1927.

1. Good will paid in to a corporation for capital stock can not be included in invested capital in the absence of proof of its actual cash value at the time paid in.

2. No deduction from gross income for the obsolescence of good will can be allowed.

*Fred C. Scofield, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency of $4,769.61 in income and excess-profits taxes for the fiscal year ended January 31, 1920. It is alleged that the Commissioner erred in (1) disallowing a value for the good will (within the limitation of section 326, Revenue Act of 1918) of a predecessor business, for which $180,000 par value capital stock was issued; and (2) disallowing a deduction for the obsolescence of the good will of a wine and liquor business lost through the operation of Federal prohibition.

### FINDINGS OF FACT.

The petitioner was incorporated in 1902 under the laws of New York and has conducted a cafe and restaurant business at Nos. 9–11 New Street, New York City, across the street from the New York Stock Exchange. Petitioner commenced its occupancy of the premises on May 1, 1902. Upon incorporation, the petitioner took over the cafe and restaurant business of the late Fred C. Eberlin, who had conducted the same as an individual enterprise for many years prior thereto, and issued $180,000 par value of its capital stock for the good will of said business. In addition to its public place of business, and about four blocks distant therefrom, the petitioner maintained a storeroom at which it made its own blends of liquors. Prior to national prohibition it was licensed as a rectifier of liquors and a retail and wholesale liquor dealer. It possessed and dealt in its own brands of liquors in addition to the standard brands, had its own trade-marks and labels, and, as rectifiers, prepared and dealt in its own blends of liquor. The total receipts from the restaurant, liquor, and cigar businesses were kept in separate accounts.

Prior to national prohibition the cafe and restaurant was open for business from 7 a. m. to 7 p. m. and approximately 25 days of the month. The bulk of the restaurant business was done between the hours of 11.30 a. m. and 2.30 p. m., while the liquor business continued throughout the day to the closing hour. Some of the petitioner's customers patronized only the bar, some patronized only the restaurant, and some patronized both the bar and restaurant. Its liquor patrons often ordered petitioner's own brands by name. It had some liquor customers who purchased only for delivery outside of the place of business, and deliveries of bottled liquors were made not only in and around New York City, but also over practically the entire eastern United States where not prohibited. The charge accounts in the liquor business averaged about $800 per month. Soft drinks were also carried and sold, but were used principally in the preparation of mixed drinks. Through national prohibition the liquor business was lost and since then petitioner has continued the

restaurant and cigar business and the sale of soft drinks.  The bar has been used as a lunch counter and for the dispensing of soft drinks.

Prior to national prohibition the petitioner employed in its liquor business four regular bartenders at an aggregate annual wage of $7,000, one extra bar boy, who devoted his time partly to the restaurant and partly to the liquor business, at a total annual wage of $780, and one man for its storeroom at an annual wage of $1,300.  For the storeroom it paid an annual rental of $600 and for the cafe and restaurant premises it paid an annual rental of $10,000.  The latter premises consisted of an oblong room, 100 feet by 40 feet, the rear 20 feet being devoted to the kitchen.  The bar was 80 feet long, of which approximately 6 feet was used for serving oysters.

The sales, inventories, purchases and gross profits of the wine and liquor business for the years 1909 to 1913, inclusive, were:

|  | Jan.31,1909 | Jan.31,1910 | Jan.31,1911 | Jan.31,1912 | Jan.31,1913 |
|---|---|---|---|---|---|
| Sales | $73,142.17 | $74,868.96 | $65,404.84 | $60,141.64 | $63,270.44 |
| Cost of sales: |  |  |  |  |  |
| Opening inventory | 9,071.79 | 8,606,85 | 8,018.64 | 8,103.84 | 6,952.00 |
| Purchases | 31,868.03 | 30,244.11 | 28,019.77 | 24,692.55 | 30,211.92 |
| Total | 40,939.82 | 38,850.96 | 36,038.41 | 32,796.39 | 37,163.92 |
| Less closing inventory | 8,606.85 | 8,018.64 | 8,103.84 | 6,952.00 | 8,375.29 |
| Cost of sales | 32,332.97 | 30,832.32 | 27,934.57 | 25,844.39 | 28,790.63 |
| Gross profit | 40,809.20 | 44,036.64 | 37,470.27 | 34,297.25 | 34,479.81 |

The total sales for the year ended January 31, 1909, in the restaurant business amounted to $87,139.34 and in the cigar business they amounted to $17,660.21.  The total expenses for the entire business (restaurant, cigar, and liquor) for the years 1909 to 1911, inclusive, were:

|  | Jan.31,1909 | Jan.31,1910 | Jan.31,1911 |
|---|---|---|---|
| Officers' salaries | $2,580.00 | $2,790.00 | $3,210.00 |
| Rent (both premises) | 10,550.00 | 10,600.00 | 10,600.00 |
| Taxes | 447.18 | ---------- | 550.00 |
| General expense | 10,270.12 | 10,871.64 | 10,733.84 |
| Insurance | 73.56 | 269.97 | ---------- |
| Wages | 27,430.39 | 26,124.71 | 27,864.20 |
| License fees | 662.52 | 1,435.40 | 1,214.60 |
| Glassware | ---------- | 432.03 | 298.59 |
| Bad debts | ---------- | 1,252.57 | 1,840.67 |

The restaurant and cigar inventories for the years 1908 to 1913, inclusive, were:

|  | Feb.1,1908 | Feb.1,1909 | Feb.1,1910 | Feb.1,1911 | Feb.1,1912 | Feb.1,1913 |
|---|---|---|---|---|---|---|
| Restaurant | $598.40 | $1,085.23 | $633.48 | $561.80 | $644.37 | $899.49 |
| Cigar | 3,043.71 | 2,784.05 | 2,807.58 | 2,931.49 | 2,558.09 | 1,948.48 |

The net profits of the entire business for the years 1902 to 1906, inclusive, were:

| | |
|---|---:|
| July 31, 1902 | $4, 250. 07 |
| Jan. 31, 1903 | 4, 305. 60 |
| July 31, 1903 | 4, 640. 27 |
| Jan. 31, 1904 | 5, 090. 73 |
| July 31, 1904 | 6, 795. 56 |
| Jan. 31, 1905 | 5, 772. 29 |
| July 31, 1905 | 1, 772. 29 |
| Jan. 31, 1906 | 2, 231. 86 |

### OPINION.

VAN FOSSAN: The petitioner seeks (1) an allowance (within the limitations of section 326, Revenue Act of 1918), for invested capital purposes, of good will paid in for stock, and (2) a deduction from gross income for the obsolescence of good will lost through the operation of national prohibition.

The actual cash value of good will and other intangibles paid into a corporation for stock, not exceeding 25 per cent of the par value of the total stock outstanding, may be included in invested capital. (Section 326(a)(4) and (5), Revenue Act of 1918.) The actual cash value of good will at the time paid in must, however, be definitely established. *Appeal of Richmond Dairy Lunch*, 1 B. T. A. 876. The petitioner submits no evidence of the operation of the business prior to incorporation, and, at the best, only meager evidence of essential facts relative to the business subsequent to incorporation. There is not sufficient evidence in this record to enable us to determine the actual cash value, if any, of the good will at the date of incorporation. *Appeal of Saenger Amusement Co.*, 1 B. T. A. 96, and *Appeal of W. E. Marshall & Co.*, 1 B. T. A. 175; see also *Camden* v. *Stuart*, 144 U. S. 104. Accordingly, the action of respondent excluding good will from invested capital must be approved.

The evidence is likewise insufficient to establish any value for good will either at March 1, 1913, or at the date when it is alleged to have become obsolete. However, if value were proved no deduction for the obsolescence of good will could be allowed, as good will is not a depreciable asset, subject to obsolescence, within the meaning of section 234(a)(7) of the Revenue Act of 1918, for which a deduction from gross income may be allowed. *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626; *Manhattan Brewing Co.* v. *Commissioner*, 6 B. T. A. 952.

*Judgment will be entered for the respondent.*

Considered by MARQUETTE, PHILLIPS, and MILLIKEN.